## Muir *v.* Wilson Coal Company et al., Appellants.

Argued December 15, 1960. Before Rhodes, P. J., Gunther, Wright, Woodside, Ervin, Watkins, and Montgomery, JJ.

*Penrose Hertzler,* with him *Richard Henry Klein,* for appellants.

*Sidney Apfelbaum,* for appellee.

Opinion by Ervin, J., March 22, 1961:

In this workmen's compensation case the referee made an award which was affirmed by the board and the court below. This appeal followed.

The only question involved is whether the claimant's decedent, Norman Muir, was engaged in the furtherance of the employer's business and affairs, and, therefore, within the course of his employment, at the time he sustained the accidental injuries which directly caused his death.

On October 17, 1956, at about 7:35 a.m., the decedent and other crew members were passengers in a car owned and operated by one Paul Roth, a fellow crew member, and were on their way to Pennag Colliery. On this occasion the automobile, while being thus operated on a public highway by the said Paul Roth, collided with the rear of a coal truck-trailer and decedent suffered serious injuries which caused his death on November 7, 1956.

The general ruling is that an employee who is injured on his way to work, or before reaching the premises of his employer, cannot recover: *Eberle v. Union Dental Co.,* 390 Pa. 112, 134 A. 2d 559; *Smith v. Frederick Investment Co.,* 152 Pa. Superior Ct. 534, 33 A. 2d 510; *Lints v. Delaware Ribbon Manufacturers, Inc.,* 173 Pa. Superior Ct. 540, 98 A. 2d 643. He must be actually engaged rather than constructively engaged in the business or affairs of his employer: *Maguire v. James Lees & Sons Co.,* 273 Pa. 85, 116 A. 679.

The board and the court below found that the present case fell within an exception to the general rule because of the peculiar factual situation present. The

board considered two factual points to be most persuasive and cogent factors bearing upon the question as to whether the decedent at the time of the accident was actually engaged in furthering the business and affairs of the employer-defendant. The first one was that the decedent's starting time for work in the morning was 7:00 a.m. He was paid from 7:00 a.m. to 2:00 p.m. He was supposed to leave his home at or before 7:00 a.m. and he did not normally report at the defendant-company's office in Shamokin but went to Pennag Colliery (not owned or operated by defendant) to pick up certain tools and equipment and then proceeded to the actual physical place of work on survey jobs, the location of which had been previously determined by the chief engineer of the defendant. The accident which resulted in Muir's death occurred before they reached Pennag Colliery but it occurred at 7:35 a.m., some 35 minutes after the commencement of pay time. The employer must have had some good reason for paying Muir from 7:00 a.m., when he was supposed to depart from his home. The pay was started at this point probably because of the fact that Muir would not always be going to the same place to perform his work. We cannot conceive of the employer paying an employee for time of service if it were not for the employer's benefit and in furtherance of employer's business. This fact alone, we believe, is sufficient to make this case fall within one of the exceptions to the general rule.

The second factual situation which the board considered important was that Muir, who was a survey crew chief, had certain special duties and responsibilities both on the actual survey and afterwards in compiling his reports. As said by the board: "The field notes of the chief . . . are the heart, arteries, and lungs of any survey. The transit, chains, and other impedimenta are the necessary physical trappings, but, without the written record of the courses, headings, and

distances which constitute the field notes, you have no survey or report thereof." The widow of Muir, claimant here, testified that her husband brought books and tapes home with him. In fact, they were so important that the defendant company picked them up from Mrs. Muir after the accident. Roth, who was the driver of the car, testified as follows: "Q. Was there any property of the Coal Company in your car that morning? A. There might have been books he took home with him. Q. What type books? A. Engineering books that he used off the field." See *Wolfingbarger v. Addressograph-Multigraph Corp.,* 188 Pa. Superior Ct. 136, 146 A. 2d 309.

This is a case where an accident happened during usual working hours. This is not an "on the way to work" case nor a deviation from employment situation. The decedent was purposefully pursuing, during his usual and normal working hours, the performance of his obligations for the benefit and convenience of his employer. The decedent was occupying himself consistently with his contract of employment and in a manner reasonably incidental thereto, all of which furthered the business and affairs of his employer: *Combs v. Cole Brothers Circus, Inc.,* 165 Pa. Superior Ct. 346, 67 A. 2d 791; *Keim v. Burkholder,* 182 Pa. Superior Ct. 460, 127 A. 2d 752.

A liberal construction should be given to the compensation act in the matter of ruling upon exceptions. In *Hohman v. George H. Soffel Co.,* 354 Pa. 31, 46 A. 2d 475, our Supreme Court affirmed an award in favor of a claimant who was a roving or itinerant workman and who had no regular place of business and did not report regularly to his employer's place of business but went directly from his home to a particular job as directed and was reimbursed for his traveling expenses and who was injured while traveling and transporting supplies from his home to the job for the day.

The present case is even stronger than the *Hohman* case because Muir was being paid for his services at the time the fatal injuries occurred and was performing those services in accordance with the instructions of his employer. See also *Spry v. Polt,* 186 Pa. Superior Ct. 326, 142 A. 2d 484; *Mitchell v. Holland Furnace Co.,* 189 Pa. Superior Ct. 82, 149 A. 2d 662.

Judgment affirmed.