## Cox *v.* Universal Terminal & Stevedoring Company et al., Appellants.

208

Argued June 15, 1965.  Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, FLOOD, JACOBS, and HOFFMAN, JJ.

*John M. Fitzpatrick,* with him *Joseph R. Thompson,* for appellants.

*Bert E. Zibelman,* with him *Freedman, Borowsky & Lorry,* for appellee.

OPINION BY ERVIN, P. J., September 16, 1965:

The question raised by the appeal in this workmen's compensation case is whether claimant's decedent, Cox, was engaged in the furtherance of his employer's business and therefore within the course of his employment at the time he was shot and killed by a fellow employe.

The referee, the board and the court below made an award for the claimant.

There is no dispute as to the controlling facts as found by the board. Cox was foreman and had charge of hiring a stevedore gang employed by the defendant, Universal Terminal & Stevedoring Company. On the morning of April 26, 1962 Cox was ordered by defendant to hire a work gang of 22 men, including himself, to load drums of oil aboard a vessel in Paulsboro, New Jersey. The hiring was done at Pier 46, South Wharves, Philadelphia, at 8:00 o'clock a.m. to commence work at Paulsboro, New Jersey, at 1:00 o'clock p.m., and included James Beard, a personal friend of Cox. Defendant chartered a bus to transport the men from Pier 46, Philadelphia, to Paulsboro, New Jersey. Under contract regulations defendant furnished transportation and paid one-half hour traveling time for each trip from the point of origin to the place of work and return. The bus left Pier 46 about 12:15 p.m., carrying 18 of the 22 men and Cox. The remaining four longshoremen traveled to Paulsboro in the car of the assailant, James Beard. Work of unloading fifty gallon oil drums did not commence until 1:10 p.m. Although not part of his duty, Cox helped the rest of the gang since one member was missing. It was subsequently discovered that this man had been drinking and was asleep. A near accident caused tempers to flurry and Cox accused the sleeping gang member of drinking on the job. Beard defended the gang member and argued with Cox. Beard had been drinking an alcoholic beverage with several other gang members. Cox stated he

would fire any gang member who came upon the job drunk, and ordered Beard off the ship. Beard then returned to Philadelphia alone in his car.

At 5:15 p.m. the rest of the gang finished their work in Paulsboro, New Jersey, boarded the bus, and returned to Pier 46, Philadelphia, where they were discharged from the bus. At this time the assailant Beard emerged from his car and aimed his rifle at Cox, who, with the other gang members, scurried for cover. After Beard was calmed by one of the gang members, Cox again stepped into the open and attempted to retrieve his shirt which he had dropped in flight. Beard, who was walking away, turned, saw Cox and, without raising his rifle, fired from the hip, hitting Cox. Decedent then ran across the street, slumped over a barrel and subsequently died. The shooting occurred about 5:45 p.m. Cox was paid until 6 p.m. under his contract with the company and he had the responsibility of dismissing the bus.

The evidence, viewed in a light most favorable to claimant, is sufficient to sustain the findings of fact of the board, which facts are not disputed. It is a question of law for the courts to decide whether, under these facts, deceased was in the course of his employment at the time he was killed: *Goodman v. University Shop, Inc.*, 195 Pa. Superior Ct. 129, 134, 169 A. 2d 316. Here the accident may be viewed as occurring off the "premises" of the employer, although it is apparent that the "working place" at any given instance of the decedent and the other longshoremen included the entire pier water front of the Delaware Valley. There is no general formula to determine whether an accident off the premises of the employer occurred in the course of employment: *Goodman v. University Shop, Inc.*, supra.

Where the accident or injury occurs away from the employer's premises, the employe must be actively en-

gaged in the business or affairs of his employer: *Muir v. Wilson Coal Co.,* 194 Pa. Superior Ct. 487, 168 A. 2d 588. In that case the employe, Muir, member of a survey crew, was killed at 7:35 a.m. on his way to defendant's office. Muir, however, was paid from 7:00 a.m. We there stated, at page 489: "The employer must have had some good reason for paying Muir from 7:00 a.m., when he was supposed to depart from his home. The pay was started at this point probably because of the fact that Muir would not always be going to the same place to perform his work. We cannot conceive of the employer paying an employee for time of service if it were not for the employer's benefit and in furtherance of employer's business. This fact alone, we believe, is sufficient to make this case fall within one of the exceptions to the general rule." The fact, therefore, that Cox was paid until 6:00 p.m. is important as bearing upon the question of whether he was in the course of his employment when shot at 5:45 p.m. by Beard. Again, in *Miller v. Schiffner & Sons,* 196 Pa. Superior Ct. 84, 89, 173 A. 2d 707, decedent was attempting to get his employer's truck started, when he collapsed and died in front of his home. Decedent there was paid for time getting to and from his place of employment. Citing *Muir v. Wilson Coal Co.,* supra, we held in the *Miller* case that deceased was in the course of his employment and his death compensable.

Section 301(c) of the Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended, 77 PS §411, provides, in part, as follows: "The term 'injury by an accident in the course of his employment,' as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment; but shall include all other injuries sustained while the employe is actually engaged in the further-

ance of the business or affairs of the employer, whether upon the employer's premises or elsewhere. . . ."

The assailant Beard's quarrel with decedent was not personal, but came about as the result of decedent's acts in that, as foreman, he discharged the assailant Beard in the interest of employe efficiency and in furtherance of his employer's business. The present appeal is distinguishable from *Maguire v. James Lees & Sons Co.,* 273 Pa. 85, 116 A. 679. There the deceased foreman had a quarrel on the premises with two subordinates in the course of his employment concerning a matter connected with his employer's business. He was set upon and killed by the two subordinates *after working hours,* and *on his way home from work,* some 500 feet away from the well defined premises of the employer. Here, as stated, Cox was shot at a time for which he was being paid. Of course, where the quarrel and attack upon a fellow employe has its origin in purely personal animosity, the injury is not compensable under the act: *McBride v. Hershey Chocolate Corp.,* 200 Pa. Superior Ct. 347, 188 A. 2d 775 (assault by co-employe with hot water hose during time of employment and on the premises of the employer).

In *Meucci v. Gallatin Coal Co.,* 279 Pa. 184, 123 A. 766, the dispute between the boss and claimant arose on the premises during the morning working hours and concerned the number of cars handled by the claimant. Claimant was struck by the boss later in the afternoon, and on the premises, causing the loss of claimant's eye. Affirming the claim as compensable, the court pointed out that the attack did not arise from personal difficulties, stating, at page 187: "On the contrary, it clearly appeared the quarrel developed from the claim of payment for labor performed, the amount of which was in dispute. That anger was excited by the controversy between those engaged is doubtless true, but the trouble had its origin in the service, and was therefore com-

pensable, the attack having been upon property used by the company in the carrying on of the particular business. It is to be kept in mind that it is not necessary to hold the accident arose from the employment, but the claim is compensable if shown to have occurred in the course thereof, other essential requirements of the act being proven: Hale v. Savage Fire Brick Co., 75 Pa. Superior Ct. 454." The principles of the *Meucci* case control here, especially when we consider that the premises of the employer in the instant case are not clearly defined. Here Cox and the gang members had returned to Pier 46, Philadelphia, the place of the original hiring, and had not yet started for home in their own cars.

In summary then, (1) the shooting accident arose out of decedent's acts in discharging Beard and carrying out the business of his employer. That is to say the quarrel with the assailant was not personal but concerned defendant's business. (2) The accident occurred during the time covered by wages paid decedent. (3) Cox had returned to the place of hiring and had just alighted from the bus (two or three minutes elapsed) and had not entered the car in which he planned to travel to his home.

The appeal is dismissed, and the record is remitted to the court below for the entry of a judgment in favor of the claimant. As so entered, the judgment is affirmed. See *Miller v. Pittsburgh Coal Co.*, 77 Pa. Superior Ct. 51.