Richard P. Schaefer, Plaintiff, *v.* Commonwealth of Pennsylvania, Frank C. Hilton, Secretary of Property and Supplies, Defendant.

Argued March 4, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Thomas D. Caldwell, Jr.,* with him *Caldwell, Clouser & Kearns,* for plaintiff.

*Theodore A. Adler,* Deputy Attorney General, with him *Israel Packel,* Attorney General, for defendant.

OPINION BY JUDGE ROGERS, April 22, 1974:

Richard P. Schaefer, a taxpayer, has sued the Commonwealth's Secretary of Property and Supplies in equity seeking a decree preliminarily and permanently enjoining the defendant from accepting and opening bids for school buses.

The plaintiff alleges that the Department of Property and Supplies mailed to school bus vendors an invitation to submit bid proposals for school buses in kinds and numbers to meet the estimated requirements of certain school districts and intermediate units of the Commonwealth, and that the Department had no statutory power to engage in this activity. The defendant filed an answer. After hearing, we denied preliminary relief. The parties stipulated that the record made at that hearing together with the pleadings shall be the record and each has filed a motion for summary judgment.

The school buses for which the Department of Property and Supplies invited bids are intended for use by school districts and intermediate units. Neither the Commonwealth nor any branch of the Commonwealth government nor any agency of the Commonwealth has use for school buses. Rather, the Department of Prop-

erty and Supplies will give notice of the accepted proposal to the Department of Education which will disseminate the information to those districts and units which had expressed a desire to purchase their requirements through the Department of Property and Supplies.

The issue is solely one of statutory construction. The powers of the Department of Property and Supplies relating to the procurement of supplies are laid out in Section 2403 of the Administrative Code of 1929, Act of April 9, 1929, P. L. 177, 71 P.S. §633, as follows:

"The Department of Property and Supplies shall have the power, and its duty shall be:

"(a) To formulate and establish standards or specifications, whenever practicable, for articles, materials, supplies, furnishings, and equipment used by administrative departments, independent administrative, departmental administrative, and advisory boards and commissions, . . . .

"(b) To enter into contracts for supplying all stationery, printing paper, and fuel, used in the legislative and other departments of the Government, and for repairing and furnishing the halls and rooms used for the meetings of the General Assembly and its committees. All such contracts shall be awarded to the lowest responsible bidder below such maximum price, and under such regulations as are prescribed by this act, and shall be subject to the approval of the Governor, the Auditor General, and the State Treasurer.

"(c) To enter into contracts with the lowest responsible bidder for the purchase of all other furniture, materials or supplies requested by the Legislative, and other departments of the State Government, except as otherwise provided by this act, and except that contracts for the purchase of steel for use in the manufacture of vehicle registration plates may be let on the basis of the market price thereof on date of delivery. . . .

"(d) To distribute stationery, paper, and fuel to the legislative and other departments of the government, and arrange for the repairing and furnishing the halls and rooms used for the meetings of the General Assembly and its committees, upon requisition of the Governor, or of the appropriate administrative department or independent administrative board or commission, or the proper officer of the General Assembly, or of the judicial department, as the case may be: . . . .

"(e) To act as the purchasing agency for any administrative department, or independent administrative or departmental administrative board or commission, which by law is authorized to purchase materials or supplies . . . .

"(f) To collect, and furnish on request, market prices and such other information as will be serviceable in purchasing to any institution receiving State funds directly or indirectly;

"(g) To authorize any other department, or any board or commission, to make direct purchases in the field, not exceeding a specified amount, but the department shall require records of all such purchases to be transmitted to it periodically in such form as it may prescribe. In so far as practicable, purchases under this paragraph shall be made from contractors having effective supplies contracts with the Department of Property and Supplies, and shall be in accordance with applicable specifications in such contracts, otherwise such purchases shall be made from the lowest of at least two bidders.

. . . ."

A subsection (h) was added to Section 2403 of The Administrative Code of 1929 by the Act of July 9, 1971, P. L. 201, as follows:

"(h) To permit, subject to such terms and conditions as the Department of Property and Supplies may, and as hereinafter specifically provided, shall, pre-

scribe, any political subdivision or authority created by a political subdivision to participate in or purchase off purchase contracts for materials, supplies and equipment entered into by the department. Any political subdivision or authority desiring to participate in such purchase contracts shall file with the Department of Property and Supplies a certified copy of an ordinance or resolution of its governing body requesting that it be authorized to participate in purchase contracts of the department and agreeing that it will be bound by such terms and conditions as the department may, and as hereinafter specifically provided, shall, prescribe and that it will be responsible for payment directly to the vendor under each purchase contract. Any other administrative department authorized to make direct purchases of materials, supplies and equipment may similarly permit political subdivisions or authorities to participate in or purchase off purchase contracts entered into by such department. Among such terms and conditions, the department shall prescribe that all prices shall be F.O.B. destination. Political subdivisions and authorities shall be exempt from existing statutory requirements governing competitive bidding and execution of contracts with respect to the purchase of materials, supplies and equipment under this section."

The plaintiff contends that the Legislature intended by subsection (h) that political subdivisions might participate in or purchase off contracts entered into by the Department of Property and Supplies for articles purchased for the State but that it did not intend thereby to empower the department to contract for goods, all of which would be for the exclusive account of political subdivisions. He argues that the phrase "[t]o permit . . . any political subdivision . . . to participate in or purchase off purchase contracts . . . entered into by the department" indicates that the Legislature meant

only that political subdivisions should be allowed to share in contracts otherwise authorized by Section 2403; that is, in contracts for supplies purchased for State use. The difficulty with this argument is that subsection (h) read literally, as we are required to read it, plainly provides otherwise. If the subsection provided allowance for political subdivisions only "to purchase off purchase contracts" entered into by the department, the plaintiff's argument would have some cogency; but the subsection additionally authorizes the department to permit political subdivision "to participate in" contracts entered into by the department without restriction of the identity of those with whom the political subdivisions should participate.

The plaintiff also contends that the absence in subsection (h) of a provision for competitive bidding and the presence of this requirement in subsections (b) and (c) of Section 2403 suggests that the Legislature did not intend to confer upon the department the power to enter into contracts for purchase solely for participating political subdivisions. This argument would be more persuasive if subsection (h) exempted the department from competitive bidding. To the contrary its last sentence, exempting participating political subdivisions from such requirements, implies that the department should employ competitive bidding in its subsection (h) contracts, as it did in this case.

We find that subsection (h) clearly and without ambiguity empowers the Department of Property and Supplies to enter into the contract contemplated in this case. For us to adopt the reasoning and reach the result urged by the plaintiff would be "to add to a statute a requirement which the legislature did not see fit to include." *Olyphant Borough School District v. American Surety Co.*, 322 Pa. 22, 28, 184 A. 758 (1936). In view of the obvious purpose of subsection (h) to reduce the cost of government by bulk purchasing, such an in-

terpretation would also be an act favoring private as against the public interest contrary to the Legislature's presumed intent. Statutory Construction Act of 1972, 1 Pa. S. §1922(5).

The plaintiff finally contends that no contract of purchase will be entered into in this case because the participating school districts are not bound by the contract to purchase their requirements from the successful bidders. The answer is that the school districts are not parties to the contract and that the department, which is, is bound by the contract to purchase its requirements from the vendor. It is, therefore, as between the contracting parties a requirements contract and valid as such. Uniform Commercial Code, Act of April 6, 1953, P. L. 3, §2-306, 12A P.S. §2-306.

## ORDER

AND NOW, this 22nd day of April, 1974, judgment is entered in favor of the defendant and against the plaintiff.

Judge MENCER dissents.

DISSENTING OPINION BY JUDGE BLATT:

I must respectfully dissent.

It seems clear to me that the 1971 addition of subsection (h) to Section 2403 of the Administrative Code of 1929, Act of April 9, 1929, P. L. 177, 71 P.S. §633, was intended merely to permit political subdivisions or authorities to participate in or to off-purchase from contracts into which the Department of Property and Supplies (Department) was already authorized by law to enter and into which it actually does enter for the purchase of Commonwealth materials, supplies or equipment.

In no manner whatsoever does subsection (h) extend the purchasing power of the Department, which is already outlined in subsections (a) through (g) of

Section 2403. Instead, it seems to me, the Legislature merely inserted subsection (h) after the then existing enumeration of departmental powers in Section 2403 as a totally separate grant of power to political subdivisions or authorities. It permitted them to benefit by the Commonwealth's expertise in the purchase of materials, supplies or equipment, and gave them the opportunity to buy at the presumably more advantageous prices negotiated by the Commonwealth through its own authorized bidding procedures. It did so, however, only for materials, supplies or equipment which the Commonwealth already had authority to buy, needed to buy, and legally bought.

Consequently, because the Commonwealth does not itself contract for the purchase of school buses for its own use, there can be no Commonwealth contract authorized in which a political subdivision or authority can participate, and there will be no supply of school buses purchased by the Commonwealth from which any political subdivision or authority can make an off-purchase.

If the time should come, of course, when the Commonwealth does require school buses for its own use, and if it properly negotiates a contract for their purchase, the way will then be open for political subdivisions or authorities to take advantage of the privilege afforded them under subsection (h). The same will be true as to other materials, supplies or equipment which the Commonwealth does not now purchase but for which it might later have some need to purchase. At the present time, however, I can see no legal justification for the Department to advertise for bids for an item which the Commonwealth does not have the need or the authority to buy for its own use.

Furthermore, it seems clear to me that, if the Legislature had ever intended the Department to serve as a general purchasing agent for *all* of the materials, sup-

plies or equipment needed by any or all of the hundreds of political subdivisions and authorities, it would have so provided in clear and explicit language, fully realizing what great responsibilities it would thereby be placing upon the Department and what procedural and other problems it would be creating for the political subdivisions and authorities as well as for the Commonwealth.